## LOMBARDO'S RAVIOLI KITCHEN, INC. *v.* MARC RYAN, SECRETARY OF THE OFFICE OF POLICY AND MANAGEMENT ET AL.[1]

## LOMBARDO'S RAVIOLI KITCHEN, INC. *v.* MARC RYAN, SECRETARY OF THE OFFICE OF POLICY AND MANAGEMENT ET AL.

Superior Court, Tax Session, Judicial District of New Britain—
File Nos. CV00 0505420S, CV00 0505595S

Memorandum filed October 17, 2002

*Levy & Droney*, for the plaintiff in both cases.

*Jonathon L. Ensign* and *Richard K. Greenberg*, assistant attorneys general, with whom was *Richard*

[1] Appeals, in each case, to the Appellate Court by the plaintiff were filed on November 6, 2002; Appellate Court Docket Nos. AC 23621 and AC 23622 respectively.

*Blumenthal*, attorney general, for the defendants in both cases.

HON. ARNOLD W. ARONSON, JUDGE TRIAL REF-EREE. These actions are appeals by the plaintiff, Lombardo's Ravioli Kitchen, Inc. (Lombardo's Kitchen), from decisions by the defendant, the office of policy and management (office), and the named defendant, Marc Ryan, secretary of the office, denying the plaintiff's claim for an exemption from the payment of personal property tax to the city of New Britain on machinery and equipment it purchased from Lombardo's Ravioli, Inc. (Lombardo's Ravioli), on August 19, 1996. Docket No. CV 00 0505420S is the plaintiff's appeal of the office's denial of the exemption for the 1997 assessment year, and Docket No. CV 00 0505595S is the plaintiff's appeal of the office's denial of the exemption for the 1998 assessment year. The defendants have filed motions for summary judgment in both cases, claiming that no material issue of fact remains and that the defendants properly denied the plaintiff's exemption claims for the 1997 and 1998 assessment years.

General Statutes § 12-81 (72) grants an exemption from a municipality's personal property tax for newly acquired machinery and equipment by a taxpayer on or after July 1, 1992, for five full assessment years following the assessment year in which the machinery and equipment is acquired.

Section 12-81 (72) (B) sets out the process for a taxpayer to obtain such an exemption. The taxpayer holding title to the machinery and equipment located in a municipality must file with the assessor for the municipality a written application claiming an exemption on a form prescribed by the office with supporting documents showing entitlement to the exemption. Section 12-81 (72) (B) further provides that "[m]achinery or equipment shall not be eligible for exemption upon

transfer to a business organization related to or affiliated with the seller . . . ."

General Statutes § 12-94b provides for a review of the claimed exemption by the secretary of the office. Section 12-94b requires the assessor or assessors of each municipality to certify to the secretary of the office on a form provided by the office, a list of claimed exemptions granted pursuant to § 12-81 (72). General Statutes (Rev. to 1995) § 12-94b requires the secretary to notify the municipality of the acceptance or modification of the claimed exemptions "not later than the November first next succeeding the deadline for the receipt of such claims . . . ." Under § 12-94b (b), the person who files the written application for exemption may appeal the denial of the exemption by first seeking a hearing before the secretary of the office and, if unsuccessful, appeal to the Superior Court within one month of receiving notice of a denial of the appeal by the secretary.

The material facts in the present cases are not in dispute. Lombardo's Ravioli, a New Jersey corporation, originally owned the machinery and equipment at issue. Frank Scoleri owned 100 percent of the stock of the New Jersey corporation. On August 19, 1996, the plaintiff was formed as a Connecticut corporation. Scoleri owned 55 percent of the shares of stock of the plaintiff. Ten percent of the plaintiff's stock was owned by Scoleri family members. The remaining stock of the plaintiff was owned by John, Fred and Glen Moreschi.

When the plaintiff purchased the machinery and equipment at issue from Lombardo's Ravioli, the New Jersey corporation, on August 19, 1996, the plaintiff claimed an exemption from the payment of personal property taxes for newly acquired equipment. The New Britain assessor granted, and the plaintiff received, an exemption from personal property taxes for the 1996 assessment year. In separate letters in 2000, the office's

undersecretary notified the plaintiff that the office had modified and adjusted the plaintiff's 1997 and 1998 list M-65 claims for exemption made pursuant to § 12-81 (72) to deny the plaintiff's claims on the basis that the machinery and equipment at issue did not qualify for the exemption because there was a common ownership of the New Jersey and Connecticut corporations. The plaintiff corporation disagreed with the office's decision and, pursuant to § 12-94b (b) (2), sought and was granted a hearing on the denial for the 1997 assessment year. The office's undersecretary, acting as hearing officer, upheld the decision to deny the exemption on the basis that the plaintiff's personal property was not newly acquired, in that the machinery and equipment had been "transfer[red] to a business organization related to or affiliated with the seller" pursuant to § 12-81 (72) (B). The undersecretary denied the plaintiff's request for a hearing on the 1998 list exemption on the basis that he had already conducted a hearing on the 1997 list exemption, and denied the 1998 list exemption claim based upon his conclusion that the assets were not newly acquired.

In the motions for summary judgment, the defendants claim that, as a matter of law, the secretary of the office is entitled to a judgment in his favor in each case because the plaintiff is related to or affiliated with Lombardo's Ravioli, the New Jersey corporation. In opposition, the plaintiff argues that the office has not promulgated any regulations defining what is meant in § 12-81 (72) (B) by a "business organization related to or affiliated with the seller," as required by the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq., and, by not providing a legal standard by which a business organization would be considered a "related" or an "affiliated" entity, the plaintiff could not "know what level of common stock ownership will permit a corporation to qualify for the

exemption upon acquisition of machinery and equipment from another company." By creating a standard only as to it, the plaintiff argues that the office has adopted a substantive rule, or regulation, contrary to the requirements of the UAPA. The plaintiff further claims that the office is estopped to deny the plaintiff's exemption since the office did not oppose the plaintiff's exemption on the list of October 1, 1996, and the plaintiff was led to believe that the property would qualify for the exemption because, at no time, did anyone from the New Britain assessor's office or any state agency inform the plaintiff that the property would not qualify for the exemption.

"The criteria that determine whether administrative action is a regulation are neither linguistic nor formalistic. . . . The test is, rather, whether a rule has a substantial impact on the rights and obligations of parties who may appear before the agency in the future. *Salmon Brook Convalescent Home, Inc.* [v. *Commission on Hospitals & Health Care,* 177 Conn. 356, 362, 417 A.2d 358 (1979)]. . . . *Maloney* v. *Pac,* 183 Conn. 313, 325–26, 439 A.2d 349 (1981). This does not mean . . . that every administrative decision which may have precedential significance beyond the facts and party before it becomes ipso facto a regulation. *Eagle Hill Corp.* v. *Commission on Hospitals & Health Care,* 2 Conn. App. 68, 76, 477 A.2d 660 (1984). Instead, administrative agencies must necessarily interpret statutes which are made for their guidance, and they may do so without reference to regulations. *Connecticut Life & Health Ins. Guaranty Assn.* v. *Jackson,* 173 Conn. 352, 356, 377 A.2d 1099 (1977). To rule otherwise would be to ignore the subtle and intricate interaction of law and fact. It is inherent in our judicial system of dispute resolution that the interpretation of statutes, like the development of the common law, grows out of the filtering of a set of facts through the law, as seen by the administrator

or judge. The result of this application is a hybrid, composed in part of fact, in part of law, which by its existence contributes to the interpretation of a statute. Id., 356–57." (Internal quotation marks omitted.) *Sweetman* v. *State Elections Enforcement Commission*, 249 Conn. 296, 317, 732 A.2d 144 (1999). In the present cases, the undisputed facts show that the hearing officer designated by the secretary of the office was merely performing his duty of interpreting the statute and applying the law to the facts. The hearing officer applied the statute to the facts and determined that the plaintiff was "related" to or "affiliated" with Lombardo's Ravioli, the New Jersey corporation, under § 12-81 (72) (B), which would preclude it from receiving a tax exemption for the purchase of machinery and equipment. The hearing officer's application of the statutory criteria for an exemption to the plaintiff's situation was not the unauthorized promulgation of a regulation.

The exemption provisions at issue here provide for the secretary of the office to be a "watchtower" over the decisions of the assessor in granting a taxpayer's request for an exemption. Section 12-94 (a) requires the secretary annually to review taxpayers' exemption applications and to disqualify an exemption if the secretary deems that the taxpayer has not met the conditions provided for in § 12-81 (72). Whereas our appellate courts have recognized the right of assessors in each municipality to have a "watchtower" role in the administration of a fair and equitable taxing system, one also sees a similar clear legislative mandate to grant to the secretary of the office a continuous duty to act as a "watchtower" in order to achieve a fair and equitable process in granting exemptions from taxation. See *84 Century Ltd. Partnership* v. *Board of Tax Review*, 207 Conn. 250, 262, 541 A.2d 478 (1988); *Matzul* v. *Montville*,

70 Conn. App. 442, 447, 798 A.2d 1002, cert. denied, 261 Conn. App. 923, 806 A.2d 1060 (2002).

Since the court construes § 12-94b as authorizing the secretary of the office to act as a "watchtower," the doctrine of estoppel would be inapplicable here because invoking that doctrine would prevent the secretary from fulfilling his function, which is to take action to exclude property from a tax exemption when "in his judgment, it does not qualify pursuant to subdivision (72) or (74) of § 12-81." "[A]s a general rule, estoppel may not be invoked against a public agency in the exercise of its governmental functions." *Kimberly-Clark Corp.* v. *Dubno*, 204 Conn. 137, 146, 527 A.2d 679 (1987). The plaintiff has not raised any disputed material issue of fact which, if proven, would meet the plaintiff's heavy burden of establishing estoppel against the secretary of the department.

The court now turns to the merits of the plaintiff's appeals, which is whether the plaintiff was entitled to the exemption from the payment of personal property tax pursuant to § 12-81 (72) for newly acquired machinery and equipment.

In construing a statute that creates a tax exemption it is well settled that such a statute must be strictly construed against the party claiming the exemption, and the burden of proving entitlement rests on this same party. *H. O.R.S.E. of Connecticut, Inc.* v. *Washington*, 258 Conn. 553, 560, 783 A.2d 903 (2001). As the defendants point out, in the construction of statutes, "words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly." General Statutes § 1-1 (a). The court agrees with the defendants that in the absence of a statutory definition of the meaning of

"related to" or "affiliated with," it is appropriate to seek the common understanding of the meaning of these words and their dictionary meaning. See *Ziperstein* v. *Tax Commissioner*, 178 Conn. 493, 500, 423 A.2d 129 (1979).

"Affiliate has been defined as . . . a company effectively controlled by another or associated with others under common ownership or control." (Internal quotation marks omitted.) *Muha* v. *United Oil Co.*, 180 Conn. 720, 727 n.3, 433 A.2d 1009 (1980), citing Webster's Third New International Dictionary. Black's Law Dictionary defines "affiliate" as "[a] corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation." Black's Law Dictionary (7th Ed. 1999). One can discern by these definitions that the essence of the terms "affiliate" and "related," as they apply to corporations, is control. Persons having a majority of shares of a corporation have been recognized in *Yanow* v. *Teal Industries, Inc.*, 178 Conn. 262, 283, 422 A.2d 311 (1979), as having the right to control a corporation. The obvious legislative reason to exclude transfers to affiliated or related parties under § 12-81 (72) is to prevent self-dealing in the creation of an exemption by the transfer of machinery and equipment for the purpose of tax avoidance.

Effective July 1, 2001, the legislature amended § 12-81 (72) (B) to change the reference to a transfer from a "business organization related to or affiliated with the seller" to a transfer from "a seller to a related business." In the amendment, the legislature defined, for purposes of § 12-81 (72) (B), the meaning of "related business." Public Acts, Spec. Sess., June, 2001, No. 01-6, § 83. Spec. Sess. P.A. 01-6, § 83, provides in pertinent part as follows: "Machinery or equipment shall not be eligible for exemption upon transfer from a seller to a

related business. . . . For the purposes of this subdivision, 'related business' means: (i) A corporation, limited liability company, partnership, association or trust controlled by the taxpayer; (ii) an individual, corporation, limited liability company, partnership, association or trust that is in control of the taxpayer; (iii) a corporation, limited liability company, partnership, association or trust controlled by an individual, corporation, limited liability company, partnership, association or trust that is in control of the taxpayer; or (iv) a member of the same controlled group as the taxpayer. For purposes of this subdivision, 'control', with respect to a corporation, means ownership directly or indirectly, of stock possessing fifty per cent or more of the total combined voting power of all classes of the stock of such corporation entitled to vote. 'Control', with respect to a trust, means ownership, directly or indirectly, of fifty per cent or more of the beneficial interest in the principal or income of such trust. The ownership of stock in a corporation, of a capital or profits interest in a partnership or association or of a beneficial interest in a trust shall be determined in accordance with the rules for constructive ownership of stock provided in Section 267(c) of the Internal Revenue Code of 1986, or any subsequent corresponding internal revenue code of the United States, as from time to time amended, other than paragraph (3) of said Section 267(c)."

The plaintiff looks upon this amendment as new legislation that has no retroactive effect because the statute is substantive in nature. The court disagrees. Whether the amendment to § 12-81 (72) (B) is to be given retroactive or prospective effect "depends on the legislature's intent in enacting the statute." *Andersen Consulting, LLP* v. *Gavin,* 255 Conn. 498, 521, 767 A.2d 692 (2001). The court sees no substantive change in § 12-81 (72) with the enactment of the amendment because the amendment merely clarifies the meaning of "related

business." The amendment to § 12-81 (72) focuses on what our Supreme Court has previously concluded in *Yanow;* control of a corporation exists when one holds a majority of the shares of the corporation. This Public Act does not effect a substantive change in the qualifications of businesses entitled to an exemption for transfers of machinery and equipment, but rather clarifies the terms "affiliated" or "related" as expressed in the previous version of § 12-81 (72) by changing the wording to "related business" and defining the term "related business." The enactment by the legislature in 2001 of Spec. Sess. P.A. 01-6, § 83, clarifying the meaning of "related" in § 12-81 (72) (B) supports the defendant's prior interpretation of § 12-81 (72) (B) and application of that provision to the facts and circumstances of the plaintiff's cases. The plaintiff does not qualify for the exemption under § 12-81 (72) (B) as it was worded at the time of the transfer or after it was amended by Spec. Sess. P.A. 01-6, § 83.

One further sees the legislative intent to clarify § 12-81 (72) rather than make substantive changes to it by the reference in Spec. Sess. P.A. 01-6, § 83 to § 267 (c) of the Internal Revenue Code of 1986, as from time to time amended. 26 U.S.C. § 267 (a) disallows losses with respect to transactions between related taxpayers. Subsection (b) of 26 U.S.C. § 267 provides in pertinent part: "The persons referred to in subsection (a) are: (1) Members of a family, as defined in subsection (c) (4) [brothers and sisters, spouse, ancestors and lineal descendants]; (2) An individual and a corporation more than 50 percent in value of the outstanding stock of which is owned, directly or indirectly, by or for such individual." For purposes of determining the ownership of stock in applying subsection (b), 26 U.S.C. § 267 (c) provides in pertinent part: "(1) Stock owned, directly or indirectly, by or for a corporation . . . shall be considered as being owned proportionately by or for its

shareholders . . . (2) An individual shall be considered as owning the stock owned, directly or indirectly, by or for his family." The undisputed facts in the present cases clearly show that Frank Scoleri owned and controlled both the New Jersey corporation and the plaintiff corporation. A loss deduction would not be allowed under 26 U.S.C. § 267 because the transaction was between related parties. For the same reason, Scoleri's majority ownership of the shares of stock of both corporations makes both the plaintiff and Lombardo's Ravioli "affiliated" or "related" to one another, and, therefore, disqualifies the plaintiff from a tax exemption under § 12-81 (72).

Accordingly, the defendants' motions for summary judgment are granted. Judgment may enter in favor of the defendants dismissing both appeals, without costs to either party.